ALVAN ROGERS & others *vs.* HENRY P. HOLDEN
& another.

Suffolk.    March 16. — July 1, 1886.    W. ALLEN & HOLMES, JJ., absent.

A. employed B. to sell his goods at prices not less than minimum prices, so called.
B. sold goods to C., who knew of the limitations of B.'s authority, upon an
agreement that he should settle with him for the goods at prices less than those
limited. B. then sent an order for the goods to A. with the minimum prices
marked thereon. A., who was ignorant of the agreement between B. and C.,
delivered the goods to C. with a bill of parcels containing the minimum prices,
at which also the goods were charged to C. on A.'s books; and C. made no
objection to the bill. C. settled with B for the goods, according to their agree-
ment, at less than the minimum prices; and B. reported to A. that he had
received payment of the amount stated in the bill of parcels. A. credited C.,
and charged B., with this amount on his books; and A. never had a final settle-
ment with B. *Held*, that A. could maintain an action of contract against C. for
the difference between the amount of the bill of parcels and the amount paid by
C. to B.; and that A. had not, by novation, accepted B. as his creditor.

If an action for goods sold and delivered is referred to an auditor, whose report
does not set out the evidence, but finds that charges for boxes, barrels, packing,
and carting were on the bills of parcels sent with the goods, to which no objec-
tion was made at the time, and were in accordance with a custom of merchants,
this court will not sustain an objection that no recovery can be had for the same.

If an action for goods sold and delivered is referred to an auditor, who does not
report the evidence, his finding, allowing all the items of the account, including
those which did not accrue within six years before the date of the writ, if he
finds no fact in conflict therewith, is final, the case being tried on the auditor's
report alone.

CONTRACT, upon an account annexed, for goods sold and de-
livered.    The case was referred to an auditor, who found for the
plaintiffs.    At the trial in the Superior Court, before *Aldrich*, J.,
the auditor's report was the only evidence offered by either party.
The judge directed a verdict for the amount found by the audi-
tor, and reported the case for the determination of this court.
The facts appear in the opinion.

*G. A. Torrey*, for the defendants.

*D. C. Linscott*, for the plaintiffs.

GARDNER, J.    1. The defendants contend that, upon the report
of the auditor, the plaintiffs cannot recover in contract; and that
there were two courses open to them, one to ratify and adopt
the contract of their agent, and the prices he had made, the
other, to repudiate the contract and replevy the goods, or sue

for their value in trover. The law is clear, that, if the plaintiffs' property was sold by a person assuming to act for them, but without authority, and the plaintiffs waive the tort and ratify the contract, in an action against the purchaser they must ratify it as the agent made it. *Brigham* v. *Palmer*, 3 Allen, 450.

The case finds that one Norris was employed by the plaintiffs as their travelling agent, to sell their goods at prices not less than the so-called "minimum prices;" and that the defendants, from the commencement of their dealings with Norris, not only knew that he was the plaintiffs' agent, but they "had notice, at the times of the sales of the several bills of goods to them and at the times of settlement therefor, of the limitations of the authority of Norris, the plaintiffs' agent, to sell at prices not less than the so-called minimum prices."

The transactions between the defendants and Norris and the plaintiffs were as follows: Norris, the agent, made a schedule or order of the goods wanted by the defendants, and the minimum prices were marked thereon; at the same time, it was agreed between the defendants and Norris that the defendants should settle the bills at prices then agreed upon between them, and not according to the prices stated in the order. Norris sent the order to the plaintiffs at Boston, who shipped the goods ordered to the defendants, charged them on their books with the amount of goods shipped, at the prices stated in the order, and at the same time sent to the defendants, by mail, a bill of the goods, containing a description of the goods shipped and the prices, corresponding to the description and prices stated in the order by them received from Norris. After the defendants had received the goods, and the next time Norris went to the defendants' store, he settled the bill according to the prices agreed upon at the time the orders were given, and at less than the minimum prices, and receipted the bill in full sent by the plaintiffs to the defendants. He then informed the plaintiffs that he had collected of the defendants a certain sum of money, the sum so stated being equal to the full amount of the bill, when in fact he received a less sum. The plaintiffs thereupon credited the defendants with the amount paid as stated by Norris, and charged Norris with the money which he reported that he had received.

There were more than one hundred of these orders, and the transaction was substantially the same in each. The plaintiffs had no knowledge of the private agreement between the defendants and Norris.

There is sufficient evidence in these transactions to show that Norris and the defendants combined to deceive the plaintiffs, and that this was done by means of a pretended contract. The defendants ordered the goods of the plaintiffs at a certain price, which they did not intend to pay, and permitted the plaintiffs to charge them with the goods and send them bills for the same, at prices which they had agreed with Norris should not be paid. The plaintiffs now have the right to insist upon the execution of the contract which the defendants have, by implication, made. They ordered the goods at the minimum prices. When the goods arrived, and the bills with them, charging the defendants with the goods at the prices at which they were ordered, they did not refuse to receive the goods, nor did they notify the plaintiffs of any mistake in the price. By remaining silent while the numerous bills were sent to them, they have impliedly ratified the sale of the goods by the plaintiffs at the prices named in the bills. *Bearce* v. *Bowker*, 115 Mass. 129.

The defendants say, We did not make this contract, although we knew that Norris ordered the goods for us at the minimum prices, and although we received the bills of the goods at the same prices at which they were ordered, and we have remained silent ever since, yet we made an agreement with Norris — which we knew he was not authorized to make — to buy the goods at a less price. We think that the defendants cannot set up this agreement for the purpose of denying the contract which the law says exists between them and the plaintiffs. They will not be permitted to take advantage of their own wrong for their own benefit. *Hill* v. *Perrott*, 3 Taunt. 274. *Walker* v. *Davis*, 1 Gray, 506.

The case at bar is not to be confounded with *Jones* v. *Hoar*, 5 Pick. 285, *Brigham* v. *Palmer*, *ubi supra*, *Berkshire Glass Co.* v. *Wolcott*, 2 Allen, 227, and other cases of that class, cited by the defendants for the purpose of showing that the plaintiffs cannot waive the tort and sue in contract, unless they bring their action upon the contract made by the agent Norris with the

defendants. The case at bar has in it an element which is wanting in all the above-cited cases. It is this: that the defendants knew that the agent Norris had no authority to make the contract which he attempted to make with them; that the agreement between them was a transaction to obtain the goods from the plaintiffs at a less price than they were willing to sell them. It brings the plaintiffs' case directly within that of *Hill* v. *Perrott, ubi supra.*

In the note to *Jones* v. *Hoar*, above cited, containing the opinion given in that case by Judge Strong in the Court of Common Pleas, a clear distinction is made between the case of *Hill* v. *Perrott* and those sustaining the doctrine contended for by the plaintiffs. In that case, Perrott had procured the delivery of the goods upon a pretended sale to one Dacosta, under the impression that the defendant was to be his surety; but the whole was a "swindling transaction," to enable the defendant to get possession of the goods. The court held that the law would imply a contract to pay for the goods on the part of the defendant, and that he could not be permitted to control this implication by setting up the sale to Dacosta, which he had himself procured, because no man can take advantage of his own fraud. Judge Strong, in his opinion, which met with the approval of the court, says: "Although the plaintiff, on account of the fraud of the defendant, might perhaps consider him as a trespasser, yet, as the transaction assumed the form of contract by the acts of the defendant himself, and the goods went from the possession of the plaintiff by his consent, and through the forms of a sale, if the plaintiff chose to consider it as a sale, I do not see how it would be competent to the defendant to dispute it. . . . . It may be considered as belonging to a class of cases, where the plaintiff may maintain assumpsit on account of some act of the defendant, which varies it from the common cases of tort, and authorizes an action as upon a contract."

Upon the facts disclosed in the case at bar, we think the plaintiffs are entitled to maintain their action in contract.

2. The defendants contend that the plaintiffs cannot recover in any form of action,— clearly not in contract,—because the account between the plaintiffs and the defendants is balanced and closed, and the debt in suit stands charged upon the plaintiffs'

books to Norris. The auditor finds that the facts which have already been stated cannot be regarded as payment of these bills in full, as the plaintiffs made these entries on their books in ignorance of the real facts, and they have never had a final settlement with Norris. These charges and credits were apparently a convenient way of keeping the account with Norris, and were never intended as a transaction in the nature of a novation. We think that the auditor was correct in his finding.

3. The defendants also deny that the plaintiffs can recover for boxes, barrels, crates, packing, and carting. The auditor's report does not set out the evidence; it finds the facts only. He finds that these charges were on all the bills sent with the goods to the defendants, and also that they were made in accordance with the custom of Boston merchants. We see nothing inconsistent in this finding by the auditor, as matter of law.

4. The defendants further contend, that the plaintiffs cannot recover upon the items that did not, accrue within six years before suing out the plaintiffs' writ. The auditor has allowed all the items, and he has found no fact in conflict with his conclusion. He has not reported the evidence, and his conclusion is therefore final.

This disposes of all the exceptions argued by the defendants.

*Judgment on the verdict.*