GERRISH DREDGING COMPANY *vs.* BETHLEHEM SHIPBUILDING
CORPORATION, LTD.

Suffolk.    October 18, 1923. — December 24, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, & PIERCE, JJ.

*Contract,* What constitutes, Construction. *Agency,* Scope of authority.
*Payment.*

A shipbuilding corporation entered into a contract in writing with a dredging
corporation to dredge basins for a dry dock and berthing space for vessels.
The dredging corporation made a subcontract with a hydraulic dredging
corporation with relation to the work. A mechanical engineer, employed
by the shipbuilding corporation and made its local representative by its
general manager, conferred with the general manager of the hydraulic dredg-
ing corporation with relation to the pumping of material, to be furnished by
the contractor, upon the surface of an area which was, under the main con-
tract, to be filled by the contractor, so that the surface would be suitable
for use as a storage area, and it was agreed that the hydraulic dredging
corporation would do such pumping for the shipbuilding corporation for
a designated price. Thereafter damage was suffered by the hydraulic
dredging corporation by reason of the nature of the material being pumped,
and, upon its complaining to the shipbuilding corporation, it was assured
by a resident engineer that compensation would be made therefor, and it
continued the pumping. Subsequently such compensation was made by
payment by the shipbuilding corporation directly to the hydraulic dredging
corporation of $7,500. The contractor was petitioned into bankruptcy.
Thereafter the hydraulic dredging corporation continued work and was paid
for work done after such bankruptcy, but the shipbuilding corporation re-
fused to make payment for the pumping above described done previous to
the contractor's bankruptcy. At the trial of an action by the hydraulic
dredging corporation against the shipbuilding corporation to enforce such
payment, it was *held,* that

(1) A finding was warranted that a mode of payment, shown by the
evidence, by having checks made by the defendant to the contractor and
by the contractor to the plaintiff, was adopted for the sole benefit of the
defendant to avoid delay;

(2) A finding was warranted that it was within the scope of the authority
of the defendant's general manager to place the mechanical engineer in
charge as the defendant's local representative and to authorize him to bind
the defendant by the contract made in furtherance of the building of the
shipyard for the defendant;

(3) A finding was warranted that the contract relied on by the plaintiff
was made on the defendant's behalf by one authorized so to do;

(4) A finding was warranted that, under the method of payment adopted by the parties for the defendant's convenience, the contractor dredging company acted with relation to such payment only as the plaintiff's agent;

(5) A finding was warranted that the contract as to the service above described was between the plaintiff and the defendant and not between the plaintiff and the contractor dredging company;

(6) It was improper to order a verdict for the defendant.

The mere fact that testimony given at a trial is not contradicted does not require that it be believed by the jury.

CONTRACT upon an account annexed. Writ dated January 10, 1921.

The items of the account annexed were as follows:

" (1) August 28 to September 25 — To dredging forty-five thousand nine hundred thirty-two (45,932) cubic yards of material at 28c. per cubic yard      $12,760.96

" (2) Interest from October 15, 1920 to January 10, 1921, at 6%      178.65

" (3) Total      $12,939.61. "

The action was tried in the Superior Court before *Sanderson*, J. Material evidence is described in the opinion. The plaintiff contended that the defendant was liable upon the account annexed because of a contract made with it through its treasurer and general manager, one Gerrish, by one Hageman, asserting that Hageman was authorized to make such contract by the defendant's general manager, Smith, and that the contract after it was made was ratified by acts of the defendant. The defendant contended that Hageman had no such authority, and that there was no ratification by the defendant, and, further, that whatever contract the plaintiff made was with the Boston Dredging Company and not with the defendant.

The testimony relating to Smith being the defendant's general manager came from him on direct examination by the defendant and was admitted without objection. It was to the effect that, during the events in evidence, he was general manager of the defendant and as such " had control

of most phases of the operations of the company in regard to shipbuilding."

At the close of the evidence, a verdict for the defendant was entered by order of the trial judge. The plaintiff alleged exceptions.

*M. S. Gerrish*, for the plaintiff.

*D. M. Lyons*, for the defendant.

BRALEY, J. The parties stipulated that the plaintiff performed the work, payment for which is sought, and the first question is, whether there is any evidence that it was done under a contract subsisting between the plaintiff and the defendant.

The jury would have been warranted in finding that the defendant had a general contract with the Boston Dredging Company to dredge basins for a dry dock and berthing space for vessels, including the turning basin and approach to it at Quincy in this Commonwealth, and to deposit the major part of the material on the land back of the bulkhead which the defendant had constructed in " Hayward's Creek basin," or where directed by the defendant's engineer, and when " the area is filled to the maximum excavation the remainder of the material shall be deposited where the engineer shall direct." During the progress of the work the defendant ascertained that the surface of the filled area was soft and muddy, rendering it unsuitable for use as a storage yard. The contract included dipper and hydraulic dredging, and the material removed after the flats had been filled was towed away and dumped at sea. The plaintiff under a subcontract with the Boston company had engaged to do the hydraulic dredging and, when the condition of the yard was discovered, Harry A. Hageman, a mechanical engineer employed by the defendant, conferred with Herbert T. Gerrish, the plaintiff's treasurer and general manager, as " to the possibility and practicability of securing and depositing over the surface of the fill . . . sand and other material suitable to make such a surface on part of the area back of the bulkhead, as to enable the defendant to use the same as a storage area." Upon investigation by the defendant's inspector the sand and other material then being moved by the Boston company was

deemed suitable for this purpose, and the Boston company, by reason of the short dump, agreed " that it would deliver, free of charge, into a designated pocket so much of said sand and other material suitable to be pumped by the plaintiff's dredge on to said area as the defendant desired for such purpose." And Herbert T. Gerrish, the plaintiff's treasurer and general manager, said to Hageman " that the Gerrish Dredging Company would pump such sand and other material suitable for pumping by plaintiff's dredge on to said area for the sum of twenty-eight cents per cubic yard." It further appeared and could be found " that the material furnished by Boston Dredging Company to be pumped on to the designated area by the plaintiff's dredge contained sufficient rock and stone to cause great delay and damage to the plaintiff's dredge, as a result of which complaint was made . . . to John Olsen, resident engineer of the defendant . . . and that after said complaint . . . the plaintiff continued pumping such material on to the designated area with the assurance given by Olsen that the plaintiff would be compensated by the Bethlehem Shipbuilding Corporation for all such delay and damage by reason of its . . . dredge encountering rock in the sand deposited to be pumped by the plaintiff . . . and that subsequently after a series of conferences, at one of which Mr. Smith, general manager of the defendant corporation was present, the defendant paid directly to the plaintiff . . . $7,500, as the agreed amount of damages suffered . . . by reason of its . . . dredge encountering such rock . . . and in addition thereto, has paid directly to the plaintiff the further sum of $603.96 as the estimated yardage pumped subsequent to September 25," the date when " the Boston Dredging Company was petitioned into bankruptcy," and Olsen " requested the plaintiff to continue such surfacing operations for a few days."

It was contended by the defendant that the last payment was made for two days' dredging because of a letter from the plaintiff that it would proceed after September 25 if " you will agree to pay us for the same direct." It was decided in *Gassett* v. *Glazier*, 165 Mass. 473, 480, 481, that, where a contract is to be gathered from talks between the parties,

the question, whether a contract was made, and, if so, what it was, must usually be tried as a question of fact. The probative effect of this letter, when read in connection with evidence to which we shall later refer, was for the jury. The record shows that Charles E. Baker, general manager and treasurer of the Boston company, was present at the interview just described, and Gerrish, whose credibility was for the jury, who could disregard any evidence to the contrary of the defendant's witnesses Smith, Hageman and Olsen, further testified, that " Mr. Hageman asked Mr. Baker if Mr. Baker was willing to bring that material up and if he had the consent of the Government to bring it up, and Mr. Baker told Mr. Hageman that he had. Mr. Hageman then turned to me and said, ' And you will pump it on there for twenty-eight cents a yard ' . . . I then asked him if he would draw up a new contract for the doing of this work direct with the Gerrish Dredging Company . . . . He hesitated a moment or two and said, ' In order to do that it would necessitate his getting a new purchase order from his company, before any work could be done,' and as Mr. Baker, — as he, Mr. Baker, were taking the same to sea all the time, he was anxious to get the material. He did not want any delay. He wanted the thing decided whether or not he was going to do it, and he asked me if I had any objection . . . to the Bethlehem Shipbuilding Company drawing the checks which would be due us for pumping this material to the order of the Boston Dredging Company, and having the Boston Dredging Company turn them over to us; that if I was willing to do that, we could go ahead with the work immediately, and he could decide right then and there to go ahead and do it " and close the deal. " I agreed to it." It was admitted by Gerrish that, when the claim for damages was adjusted, counsel for the defendant advised, that the money could not be paid unless the trustees in bankruptcy of the Boston company disclaimed any title to the amount, and that with counsel's assistance a release was obtained. But he also testified, that " he did not see any need of asking the trustees of the Boston Dredging Company to release their rights in the money ' that was coming ' to him from

the defendant through the Boston Dredging Company, because he knew mighty well ' they wouldn't pay if they went into bankruptcy, — they couldn't hand it over to me.' . ... the suit never would have occurred had the Boston remained solvent, because the deal would have gone through as planned. They would have turned the checks over to them, and they would have turned them over to me. We never would have had any occasion for it. We would have been paid for it."

The mode of payment however was not as matter of law decisive of the defendant's liability. The arrangement could be found to have been for the sole benefit of the defendant, where prompt service admitted of no delay and was practically indispensable. It is plain that there was no contract to perform the work in question made by the Boston company with the plaintiff. It is argued however that no contract is shown between the plaintiff and the defendant. The powers of the defendant's general manager Smith are not disclosed in the record. But, as a witness, he said, " that he told Mr. Gerrish that Mr. Hageman was to be my local representative on the job; that he was the mechanical engineer who would supervise the work," and when the defendant paid damages for the injury to the plaintiff's dredge sustained in doing the work, Smith, as the jury could find, with knowledge of the cause of the injury received while the plaintiff was in performance of the contract made with Hageman, authorized payment to the plaintiff.

It has been often declared that the apparent powers of an agent are his real powers, and Hageman as the local representative of Smith could be found to have been authorized to bind the defendant by a contract made in furtherance of the building of the yard under the conditions shown. *Danforth* v. *Chandler*, 237 Mass. 518, 522. If Smith as general manager could bind the defendant, then in so far as necessary for the prosecution of the work, he could delegate the necessary authority to a subordinate, and the jury were to determine whether as his representative Hageman stood in the place of Smith. *Phelps* v. *Sullivan*, 140 Mass. 36.

*Postal Telegraph-Cable Co.* v. *Likes,* 225 Ill. 249.   *Hannon* v. *Seigel-Cooper Co.* 167 N. Y. 244.

It would follow that the proposal made by Hageman and accepted by the plaintiff to use the Boston Dredging Company as the medium for transmission of the checks, cannot be set up as matter of law for the purpose of destroying the promise on which the plaintiff relied, and by whom the contract has been executed.   *Rogers* v. *Holden,* 142 Mass. 196.

It is next contended that, even if a contract were established, the defendant was bound only to pay the Boston Dredging Company, and, having done so, the plaintiff cannot recover.   But the defendant could be found chargeable with the knowledge of Smith and Hageman that the work was being performed by the plaintiff, and of Hageman that the mode of payment was for its accommodation.   The payments to be made were not for work done by the Boston Dredging Company, but by the plaintiff to whom the checks therefor when received by that company were to be indorsed and delivered.   The jury, upon being instructed as to the law, were to decide whether the Boston Dredging Company was the plaintiff's agent to receive and accept payment, or whether the checks with the understanding of all parties were received only for the plaintiff's use, and until indorsed and delivered there was no satisfaction of the defendant's debt.   *Wright* v. *Old Colony & Fall River Railroad,* 9 Gray, 413, 415.   The answer is a general denial, and, upon proof of performance, the plaintiff could recover on an account annexed for the work done, and the burden of proving payment was on the defendant, even if this defence is not raised by the answer.   *Harrington* v. *Baker,* 15 Gray, 538.   *Simmons* v. *Lawrence Duck Co.* 133 Mass. 298.   *Attleborough* v. *Middleborough,* 10 Pick. 378, 379.   *Mulry* v. *Mohawk Valley Ins. Co.* 5 Gray, 541, 543.   While it is true that the defendant's investigator of accounts testified, that by two vouchers the Boston Dredging Company had been paid in full for " twenty thousand cubic yards of suction dredging which was the subject of the conversation with H. T. Gerrish which he had previously testified to," and the record recites that he " testified without contradiction," his testimony

was not conclusive. *Lindenbaum* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 314, 323. The jury had before them the evidence of the president of the Boston Dredging Company, a witness for the plaintiff, who positively testified that the last suction work done by that company was prior to July 12, 1920, and that no money had ever been received for the work covered by the declaration which began August 28 and ended September 25, 1920. If the jury found that the Boston Dredging Company was the plaintiff's agent, it was still a question of fact on all the evidence notwithstanding the investigator's testimony whether such payments in any form had actually been made. *Warner* v. *Fuller,* 245 Mass. 520.

A verdict for the defendant should not have been directed and the exceptions must be sustained.

*So ordered.*