PRISCILLA PUBLISHING COMPANY *vs.* CREAM OF WHEAT COMPANY.

Middlesex.    December 13, 1923. — February 27, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* Construction, Performance and breach, For advertising.    *Set-off.*
    *Practice, Civil,* Judgment in action in which a declaration in set-off has
    been filed.    *Words,* " Circulation," " Subscriptions," " Receives."

The provisions of a contract between the publisher of a magazine and an
    advertiser therein provided that the publisher guaranteed that the
    average circulation of the magazine should be a certain number of
    copies per issue and that the term " circulation " should be construed
    as follows: " The total number of copies of each issue of the publication
    above mentioned, which shall be published and sold and delivered by the
    publishers thereof, both to paid subscribers and to the news agencies,
    exclusive of all returns from news agencies and copies given away

in any manner whatever. And it is further understood and agreed that no subscriptions shall be considered a paid subscription that is more than six months (6) in arrears or for which the publisher receives, in cash, less than fifty percent (50%) of his published subscription price." *Held*, that the language of the contract was free from ambiguity and that the manifest intention of the parties was, that the guaranteed circulation should consist solely of subscriptions paid for in cash and that all other subscriptions would not be counted.

The publisher above described made a contract with an agency under which the agency agreed to pay the publisher a certain fixed price, which was less than the published subscription price of the magazine, and to put forth its best agencies " to produce " a certain number of " actual subscriptions " for the magazine each year; and the publisher agreed to pay to the agency each month a " share of the expenses for supervising and special service rendered in handling changes of addresses, adjusting complaints, verifying orders and apprehending fraud agents," such share in no case to exceed fifteen cents " for each yearly subscription produced for " the magazine, and also to continue sending to the branch agency without charge upon requisition sample copies of the magazine to be used in the production " of this subscription business." At the trial of an action by the publisher against the advertiser on the contract between them above described, it appeared that the price paid by the branch agency to the plaintiff in each instance was fifty per cent of the plaintiff's published subscription price. The defendant contended and the trial judge ruled that the copies furnished to the branch agency could not be counted under the provisions of the contract between the plaintiff and the defendant toward making up the guaranteed circulation. *Held*, that

(1) In order to be counted in the " circulation " under the contract between the plaintiff and the defendant, the paid subscriptions received and accepted were to be in cash and could not be diminished below fifty per cent of the published subscription price by payments made to the branch agency under the agreement above described;

(2) The ruling of the trial judge excluding subscriptions procured through the branch agency was correct in the circumstances.

In an action of contract where there was a declaration in set-off, the jury by order of the trial judge returned a verdict for the plaintiff for a certain sum and also a verdict for the defendant, plaintiff in set-off, for a certain less sum, and the judge reported the action to this court with a stipulation that, if certain rulings by him were correct, judgment was " to be entered on the verdict." This court, having determined that the rulings specified were right, *held*, that under G. L. c. 232, § 11, judgment should be entered for the plaintiff for the balance shown by the verdicts to be due to him.

CONTRACT, with a declaration in three counts, the first count being based upon a contract in writing with relation to advertising by the defendant in a magazine published by the plaintiff, " The Modern Priscilla," during the year 1920;

the second count being upon a similar contract for the year 1921; and the third count being upon an account annexed for a balance of $21,116.89 with interest alleged to be due for advertising during the years 1920 and 1921. Writ dated July 1, 1922.

The defendant filed an answer in recoupment and a declaration in set-off and specifications thereon, setting forth claims based on alleged failures on the part of the plaintiff to furnish guaranteed circulations, the claims amounting to $3,745.64 for the year 1919; $5,151.65 for the first ten months of 1920; $1,005.96 for the last two months of 1920, and $9,201.02 for the year 1921.

The action was tried in the Superior Court before *Walsh,* J. The determination of issues raised by the pleadings and at the trial turned on the meaning and operation of contracts between the plaintiff and various corporations, one of which was The Crowell Publishing Company. The contract with that corporation was " typical of all," and was contained in a letter under date of March 25, 1918, from The Crowell Publishing Company to the plaintiff, the terms of which were accepted by the plaintiff in writing and were as follows:

" This letter outlines the prices, terms and conditions under which we are to produce and you are to accept subscriptions for The Modern Priscilla taken by us in connection with our Branch Agency Organization starting April 1, 1918.

" We agree:

" To pay you for The Modern Priscilla sixty-five cents (65) per year for each subscription produced by our Branch Agency Organization to be sent to any address in the United States and its possessions and in Mexico.

" To put forth our best efforts to produce thirty thousand (30,000) annual subscriptions for The Modern Priscilla each year during the term of this agreement.

" To pay you, upon sixty (60) days advance notice, at the rate of seventy-five cents (75c.) per yearly subscription to The Modern Priscilla in the event the mail subscription rate of The Modern Priscilla is increased to $1.50 per year.

" In consideration to the above, you agree:

" To pay us promptly each month, upon receipt of our bill

therefor, your share of the expense for supervising and special service rendered in handling changes of address, adjusting complaints, verifying orders and apprehending fraud agents. It is understood that your share of the expense assumed shall in no case exceed fifteen cents (15c.) for each yearly subscription produced for The Modern Priscilla.

" That you will continue, as now, to send out to our Branch Agencies without charge, promptly upon receipt of our requisition therefor, the necessary sample copies of The Modern Priscilla to be used in the production of this subscription business.

" That you will cancel promptly, upon receipt of our notice, those subscriptions we request you to cancel. Also that credit will be extended to us promptly each month, as the cancellations are received, for the unexpired portions of the cancelled subscriptions at the rate of four and one-sixth cents ($4^1/_6$c.) per copy. Should you, at any time during the term of this contract, increase the rate on The Modern Priscilla to seventy-five cents (75c.) per subscription, it is agreed that you will credit us at the rate of five cents (5c.) per copy for the unexpired portion of the cancelled subscriptions for which we have paid you the seventy-five cents (75c.) rate.

"That this contract is made subject to cancellation by either party upon one year's written notice to the other party.

" If you will signify your acceptance of this proposition in the space indicated below and return one signed copy to us, we will consider this a valid and binding contract between us."

The record recites, that in each of the agency contracts, " the price agreed to be paid in the first instance for The Modern Priscilla was 50% of the plaintiff's published subscription price.

" Thereupon it was agreed between the parties (1) that the average total number of copies of each issue of The Modern Priscilla published, sold and delivered by the plaintiff — exclusive of all returns from news agencies, copies given away, and copies sent to subscribers whose sub-

scriptions were more than six months in arrears — was 571,942 during 1919; 651,794 during 1920; and 623,475 during 1921; and (2) that of the foregoing averages, 185,319 during 1919; 200,401 during 1920; and 214,673 during 1921 were sold and delivered pursuant ·to and in accordance with contracts similar to that above set forth. The parties then entered into the following written agreement:

" ' It is agreed for the purposes of this trial that the circulation of The Modern Priscilla for the years 1919, 1920 and 1921, fell materially short of the average monthly circulation guaranteed by the contracts for those years, in the amount of a monthly average of 113,377 for 1919, 148,607 for 1920 and 191,198 for 1921, if the court in construing the contracts between the parties and the contracts between the plaintiff and the Crowell Publishing Company, and their relation to each other, rules that the payments made by the plaintiff to the Crowell Publishing Company (which payments were all that could be claimed by the Crowell Publishing Company from the Priscilla Publishing Company under their contract) should be deducted from the cash received by the Priscilla Publishing Company for such copies or subscriptions in determining whether the plaintiff has received in cash for these copies or subscriptions fifty per cent of the published subscription price of The Modern Priscilla.

" ' It is agreed that the defendant's specifications in connection with its claim in set-off and its claim of recoupment as to total circulation and copies returned or given away are true.

" ' It is agreed for the purposes of this trial, that the contracts between the plaintiff and other companies having relations with the plaintiff similar to the plaintiff's relations with Crowell, are substantially the same in wording as the Crowell contracts.

" ' Nothing in this agreement shall be construed as an admission by either party that the copies of subscriptions delivered under the Crowell contract and similar contracts were or were not subscriptions, nor an admission that the Crowell Publishing Company and others having similar relations with the plaintiff were or were not news agencies,

subscribers, agents for subscribers, agents for the plaintiff, or stood in some other relation to the plaintiff.' "

Other material evidence is described in the opinion.

By order of the trial judge, the jury returned a verdict for the plaintiff in the sum of $6,245.64 and for the defendant upon its declaration in set-off in the sum of $3,745.64, and the judge reported the action to this court for determination in accordance with the following agreement of the parties: If his rulings were right, judgment was " to be entered on the verdicts; " if his rulings were wrong, judgment was to be entered for the plaintiff in the sum of $21,116.89 with interest; or if his rulings were wrong and the record disclosed issues of facts which he erroneously considered and ruled upon as matters of law and such issues of facts were material to a just disposition of the case and should have been submitted to the jury, then the case was to be remanded for a new trial or such other order was to be made as law and justice might require.

In this court, counsel for the plaintiff argued that there was no failure to supply the circulation guaranteed under the plaintiff's contract with the defendant if the copies sold under the Crowell contract were " sold and delivered " either to paid subscribers, for whose subscriptions the publisher received, in cash, at least fifty per cent of his published subscription price, or " to the news agencies; " that the determination of the question, whether such copies fell within the foregoing clause, depended upon the legal effect of the Crowell contract; that it was not clear whether the Crowell contract provided for the sale of the magazine to the Crowell Company or made the Crowell Company its *del credere* agent for the sale of the magazine to the subscribers; but that on either theory copies sold under that contract should be counted toward fulfilling the guaranteed circulation because, if the Crowell Company bought the magazine from the plaintiff, then the copies sold under the Crowell contract were " sold and delivered to the news agencies " and the price received therefor was immaterial, and if the Crowell Company was the plaintiff's *del credere* agent, then the copies sold under the Crowell contract were

" sold and delivered to paid subscribers " for whose subscriptions the publisher received in cash at least " fifty per cent of its published subscription price," and the actual cost of service of the Crowell Company to the plaintiff, such as " handling changes of address, adjusting complaints, verifying orders and apprehending fraud agents," should not be deducted to make the final amount received by the plaintiff less than such fifty per cent.

F. T. *Field,* (G. *K. Gardner* with him,) for the plaintiff.

John S. *Stone,* (A. A. *Gillette* with him,) for the defendant.

BRALEY, J.    The plaintiff, publisher of " The Modern Priscilla," a monthly magazine, and the defendant entered into annual contracts under which the plaintiff agreed to insert and publish the defendant's advertisement of its cereal, " the cream of wheat," in each issue during the years 1919, 1920, and 1921.    The declaration has two counts to recover respectively the amounts alleged to be due for 1920 and 1921, and a third count on an account annexed covering the same period.    *Gerrish Dredging Co.* v. *Bethlehem Shipbuilding Corp. Ltd.* 247 Mass. 162.    The answer was a general denial, with a plea of payment.    A claim in recoupment and a declaration in set-off also were filed to recover alleged overpayments or damages arising from the alleged failure of the plaintiff to furnish the circulation guaranteed not only in 1920 and 1921, but also in 1919.    The parties concede that at the close of the evidence there were no issues of fact for the jury, and, the exceptions to the admission of evidence having been waived, the questions for decision on the report of the trial judge, are, whether as matter of law the verdicts ordered should be set aside or modified.

The price for the insertion of the advertisement in each month of 1919 was $1,339.80 with a cash discount of three per cent, and an average circulation of five hundred thousand copies for every month was guaranteed.    In 1920 the rate was $2,040 for each month, but in 1921 it had become $2,380, while the average circulation for 1920 and 1921 was fixed at six hundred thousand copies.

The principal, if not the only controversy, is over the

construction of the clause common to all the contracts, which relates to the volume of circulation, and its general character.   It reads as follows:

" The party of the first part does hereby guarantee that the average circulation of the above mentioned publication for the term during which the above advertisement shall run, shall be six hundred thousand (600,000) copies per issue, and it is understood that the term circulation for the purpose above mentioned, shall be construed as follows: The total number of copies of each issue of the publication above mentioned, which shall be published and sold and delivered by the publishers thereof, both to paid subscribers and to the news agencies, exclusive of all returns from news agencies and copies given away in any manner whatever. And it is further understood and agreed that no subscriptions shall be considered a paid subscription that is more than six months (6) in arrears or for which the publisher receives, in cash, less than fifty per cent (50%) of his published subscription price.

" And it is hereby understood and agreed that the said publishers of the Modern Priscilla will allow the said Cream of Wheat Company, or its authorized agent, to have at any time full access to such books and papers as are considered necessary by the Cream of Wheat Company or its agent for the purpose of examining and ascertaining the circulation of the said The Modern Priscilla and its methods of obtaining said circulation, it being understood that said examination may be made by the said Cream of Wheat Company, or its authorized agent, at any reasonable times, without notice, but that said examination shall not be made oftener than twice in each year;  and it is further understood and agreed that in case said examination does not bear out the circulation claimed and embodied in this contract and shall be found to be materially less than six hundred thousand copies (600,000) the expense of this examination, not to exceed one hundred dollars ($100.00) shall be borne by the said The Modern Priscilla, otherwise by the said Cream of Wheat Company.

" It is further understood and agreed that in case said

examination shows the circulation to be materially less than above stated The Modern Priscilla will, immediately after such examination, make a *pro rata* rebate to the Cream of Wheat Company for said shortage in circulation, paying said rebate in cash."

The language is free from all ambiguity. The parties themselves have defined the term " circulation." It is " The total number of copies of each issue of the publication . . . which shall be published and sold and delivered by the publishers thereof, both to paid subscribers and to the news agencies, exclusive of all returns from news agencies and copies given away in any manner whatever." The word " subscriptions " is also defined. " No subscriptions shall be considered a paid subscription that is more than six months . . . in arrears or for which the publisher receives, in cash, less than fifty percent . . . of his published subscription price." The manifest intention is, that the circulation shall consist solely of subscriptions paid in cash, and all other subscriptions are not to be counted. It was correctly ruled as matter of law, that the subscription agreements of the plaintiff with the Crowell Publishing Company, to accept subscriptions as shown by the record, as well as similar contracts with other companies, which contained no reference to sales of single copies, but merely covered arrangements for subscriptions to be obtained for the plaintiff by the several agencies, were not within the terms of the contracts on which the action is brought. The plaintiff moreover, by reason of the rebate in the subscription agreements, did not receive in cash fifty per centum of its regular price for subscriptions. The word " receives " as used in the contracts is synonymous with the word " accepts." The paid subscriptions received and accepted, are to be in cash, and cannot be diminished below fifty per centum of the published subscription price by rebates, or gratuities in any form to agents under agreements with the plaintiff to increase the circulation of its magazine. *Standard Oil Co. of Indiana* v. *United States*, 164 Fed. Rep. 376, 390; 90 C. C. A. 364, 378.

The circulation books of the plaintiff during the years in

question, which under the provisions of the contracts had been examined by expert accountants employed by the defendant, and whose audit was admitted to be accurate, showed that if the agency agreements were excluded the circulation fell materially below the average circulation as guaranteed. The examination of the accountants with the results thereby shown having been put in evidence, the parties for the purposes of the trial agreed, that if the ruling to which we have referred was made, " the circulation . . . for the years 1919, 1920 and 1921, fell materially short of the average monthly circulation guaranteed by the contracts for those years, in the amount of a monthly average of 113,377 for 1919, 148,607 for 1920, and 191,198 for 1921, . . . " and that " the payments made by the plaintiff to the Crowell Publishing Company, which payments were all that could be claimed by the Crowell Publishing Company from the Priscilla Publishing Company under their contract, should be deducted from the cash received by the Priscilla Publishing Company for such copies or subscriptions in determining whether the plaintiff has received in cash for these copies, or subscriptions fifty per cent of the published subscription price of The Modern Priscilla.

" It is agreed that the defendant's specifications in connection with its claim in set-off and its claim of recoupment as to total circulation and copies returned or given away are true.

" It is agreed that the contracts between the plaintiff and other companies having relations with the plaintiff similar to the plaintiff's relations with Crowell, are substantially the same in wording as the Crowell contracts."

It follows that the defendant was entitled to recover the amount overpaid, and the verdict in set-off for $3,745.64, the computation of which if the defendant prevailed is not attacked, was rightly ordered. *Massachusetts Mutual Life Ins. Co.* v. *Green,* 185 Mass. 306, 309.

The contracts severally were entire. But there is no contention that the plaintiff's failure of full performance was intentional, and, the defendant, having received and accepted the benefit of the advertisements as published, should make compensation. *Cullen* v. *Sears,* 112 Mass.

299, 308. *Burke* v. *Coyne*, 188 Mass. 401, 404. The deficiency in circulation having been established, the plaintiff, as the court correctly held, could recover only the proportion of the contract price which covered the actual circulation, to be ascertained on the basis of the guaranteed circulation of six hundred thousand copies for each issue, and the verdict for $6,245.64 should stand.

The report states, that if the rulings were right, " judgment is to be entered on the verdicts." But by G. L. c. 232, § 11, " Judgment in an action in which a declaration in set-off has been filed shall be rendered in favor of the party 'to whom a balance is found due for the amount of such balance, not exceeding the jurisdiction of the court, with costs. If the amounts found due to the respective parties are equal, judgment shall be rendered in favor of each for such amounts and an entry shall be made that the judgments are satisfied by the set-off, with costs to either party, or without costs, as the court orders." The entry accordingly must be, judgment for the plaintiff, with costs, in the sum of $2,500. *Sargent* v. *Fitzpatrick*, 4 Gray, 511. *Caverly* v. *Bushee*, 1 Allen, 292. *Woodworth* v. *Fuller*, 230 Mass. 160; *S. C.* 235 Mass. 443.

*So ordered.*