FRANK B. HOWARD vs. BARNSTABLE COUNTY NATIONAL BANK OF HYANNIS.

Suffolk. February 5, 1934. — June 24, 1935.

Present: CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Fraud. Contract,* Rescission. *Bills and Notes,* Renewal. *Corporation,* Officers and agents. *Agency,* Scope of authority. *Bank and Banking.*

A statement by a person of his financial condition, made as of his own knowledge and rightfully relied upon by the one to whom it was made, and false in material particulars susceptible of knowledge, was fraudulent in law even though made without intent to deceive.

Fraudulent misrepresentations which materially induce the making of a contract need not be the sole or predominating inducement in order to be the basis for a rescission of the contract.

The facts warranted the conclusions that the maker of a note payable to a bank knew that its cashier had no authority to accept a renewal note, that the acceptance of the renewal note by the cashier was not ratified by the bank and that therefore there was no effective renewal.

A bank holding an overdue promissory note of one of its depositors may apply his deposit to the payment of the note without his consent.

CONTRACT OR TORT. Writ dated April 25, 1932, and afterwards amended.

In the Superior Court, the action was referred to an auditor whose findings were to be final. Material findings by him, and findings and rulings by *Greenhalge,* J., are stated in the opinion. The plaintiff alleged exceptions.

*T. E. Norris,* for the plaintiff.

*A. W. Blakemore,* for the defendant.

DONAHUE, J. The plaintiff was a depositor in the defendant bank and also its debtor on a note given for money borrowed. The defendant on June 1, 1931, applied the deposit of the plaintiff on account of the note. The plaintiff brought this action to recover damages alleged to have resulted from the appropriation of the deposit to the debt. The case was tried before an auditor whose findings of fact were, under the terms of the order of reference, to be final. A judge of the Superior Court on facts found by the auditor found and

ruled that because of false and fraudulent statements made by the plaintiff the defendant was warranted in rescinding its contract with the plaintiff and in applying the funds of the plaintiff in its possession toward the payment of his overdue note and that the plaintiff was not entitled to recover. The case is here on exceptions to the findings and rulings of the judge.

The plaintiff, who was a manufacturer operating a factory at Sagamore, in October, 1930, opened an account with the defendant bank by making a deposit of $1,000 which was lent to him by the bank on his note dated October 14, 1930, and payable on February 14, 1931. He had made this arrangement with the president of the bank and after he had signed the note and mailed it to the bank he was told by the president that the directors had found fault because a financial statement had not been furnished by the plaintiff. Thereupon the plaintiff on October 14, which was the date of the note, signed a statement purporting to show his financial condition. Under the by-laws of the bank a discount committee consisting of the president, cashier and seven directors was empowered to discount notes and the board of directors had the power to approve or disapprove the report of the discount committee as to notes discounted. The transaction was ratified by the directors after the receipt of the plaintiff's written statement. It was the practice of the bank to give notes a serial number as soon as they were accepted by the bank and the plaintiff's note was given a serial number.

Shortly before February 14, 1931, the due date of the note, the plaintiff wrote to the bank asking that the loan be extended in the full amount. The defendant's cashier in reply wrote that the directors felt that a substantial payment or payment in full should be made and that the plaintiff's account at the bank did not warrant the accommodation which had been extended. The bank sent a committee to interview the plaintiff at his factory. The committee made a hasty examination of the plant, counted the machines there and was assured by the plaintiff that the machines in the factory belonged to him and were free from encum-

brance. He also told the committee that conditions with him were substantially the same as when the loan was first made in October. The auditor found that so far as the items on the financial statement given in October are concerned conditions were substantially unchanged. The committee reported the result of the interview to the discount committee. The discount committee decided to extend the loan for thirty days and the plaintiff gave a new note dated February 14 for the same amount, payable on March 16. This was approved by vote of the directors and the note was given a serial number. The auditor found that in granting the renewal the defendant relied in part on the financial statement which the plaintiff had given in October and in part on the report of the committee which had inspected the factory and interviewed the plaintiff in February.

When the second note fell due on March 16 the plaintiff telephoned the bank, talked with the cashier about the note and was told by the latter that the note "was taken care of." The plaintiff was not asked to sign a new note or to pay any discount and nothing was further said or done by him with reference to the note until about May 24. At that time he was at the bank and the cashier said there was a note "that hasn't been attended to" and said he would send a note to the plaintiff to be signed and returned. A note for $1,000 dated back to March 16 and payable in ninety-one days was sent to the plaintiff and he signed and mailed it to the bank. This note was not given a serial number and was not entered on the discount ledger nor was the transaction approved by the discount committee or by the board of directors. A charge for the discount of the note was entered on the plaintiff's account and notice of it sent to the plaintiff on May 27. On June 1 an entry was made that the charge was an error and notice of this was sent to the plaintiff. On the same day the defendant without prior notice to the plaintiff applied the balance in the plaintiff's deposit account to the note dated February 14. On the following day the note antedated March 16 was returned to the plaintiff. On June 17 the plaintiff paid the balance of his indebtedness to the bank,

The auditor found that the financial statement made by the plaintiff when the first note was given and relied on in part by the defendant in accepting the renewal note "was inaccurate in many particulars." He found that there was not sufficient evidence to judge of the accuracy of the item "Merchandise on hand, cost contract work $3600" but that he believed it to be too high. As to the item "Machinery and fixtures (cost, $22,000) 15,000" he found that while the machinery would not have sold for anything like $15,000, it might have cost a sum approaching that amount to have assembled and put into running order all the machinery then in the factory. He concluded that while the estimate was too high he did "not believe or find that it was a fraudulently high estimate" for all the machinery then in the factory. The plaintiff had purchased in 1926 seventy-six machines for $10,200, giving back to the seller a mortgage for $9,200 payable in weekly instalments of at least $40. In March, 1931, there was a balance of $2,700 unpaid on the mortgage. The financial statement did not show any balance due on the mortgage and the question "Are any of the above assets pledged" was answered "None."

The plaintiff owned another factory in Middleborough and the statement bore a notation that the Middleborough plant was "not included in this statement." The plaintiff contended before the auditor that all the machines under mortgage had been transferred to the Middleborough plant. The auditor found however that a substantial number of the machines covered by the mortgage was in the Sagamore factory when the financial statement was made, that the plaintiff had a substantial equity in them amounting approximately to three fourths of their cost to him, and that their value plus the value of thirty-three other machines owned by the plaintiff outright, "while less than $15,000.00, was near enough to that value so that the plaintiff's estimate of $15,000.00 as the value of his plant set up and in running condition was not grossly inaccurate." As to the plaintiff's contention that the statement was based solely on the thirty-three machines not subject

to mortgage the auditor found their value "was in fact so materially less than $15,000.00 that a statement of that value, if deliberately made on the financial statement, would have been dangerously close to fraud."

The auditor found that the item "Accounts payable $603.27" did not include bills for rent or trucking or household and similar bills or the amount due on the mortgage but that the omissions were due to either oversight or misunderstanding. In the item "Amount of fire insurance? $12,500," the figure should have been $7,500. On the back of the statement was a memorandum to the effect that the plaintiff had a line of credit with the Wareham National Bank of $1,500. The auditor found that this was accurate "in the sense that the Wareham bank had loaned him that amount in the previous December, but inaccurate in that they had been pressing him for payments to reduce and extinguish that loan."

The auditor's general conclusion was that "The foregoing inaccuracies in the aggregate were dangerously close to the line of fraud; and if the plaintiff had himself made out such a statement, taking time to deliberate on it, and for the purpose of obtaining a loan not yet made to him, it might well have been found fraudulent; but under the circumstances of the case, being made after he understood the loan had in fact been granted to him, being made as he believed largely as a mere formality and very hastily as the defendant's representative necessarily knew . . . and merely scanned by the plaintiff before signing, I do not find the statement to have been made with intent to deceive, or, so far as it is a question of fact, to have been fraudulent."

The ruling of the trial judge that the financial statement was false and fraudulent was not contrary to any express finding in the report. The auditor's conclusion that the plaintiff had no intent to deceive and that the statement was therefore not fraudulent did not prevent the judge ruling that the representations were in law fraudulent. This was the effect of the ruling that the judge made. Under the established law in this Commonwealth, it was

not necessary in order that the defendant be entitled to rescind that an actual intent on the part of the plaintiff be proven.   If one makes as of his own knowledge a false statement respecting a material fact which is susceptible of knowledge, he has committed an actionable fraud on another who with right has relied upon it to his damage, even though the maker of the statement did not know it to be false.   *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403, 404.   *Huntress* v. *Blodgett,* 206 Mass. 318, 324.   *Breed* v. *Berenson,* 216 Mass. 397, 401.   *Bates* v. *Cashman,* 230 Mass. 167, 168.   *Rudnick* v. *Rudnick,* 281 Mass. 205, 208.   Prior to the giving of the second note in February the plaintiff represented that the machines in his factory were free from encumbrance and that his condition was substantially the same as when the first note was given in the preceding October.   The statement of financial condition delivered at about the time of the October note purported to represent the plaintiff's own financial condition and must necessarily be taken to have been made as of his own knowledge.   So too as to his assurance in February that his condition was then substantially the same as in October.   The defendant relied on the statement and on the assurance and had the right to do so.   The subsidiary findings of the auditor warranted the judge in finding that the statement was false in material respects and in concluding that fraud in the legal sense had been established.

Fraudulent misrepresentations of the plaintiff having had a material influence on the defendant's action although not being its sole or predominating cause (*Baskes* v. *Cushing,* 270 Mass. 230, 233), the defendant had a right to rescind upon discovering their falsity.   *Wiley* v. *Simons,* 259 Mass. 159, 161.   This the defendant seasonably did after accidentally learning of the existence of the mortgage and hearing rumors as to the plaintiff's business.   It cancelled the credit.   We do not need to consider the right of the defendant to apply on the indebtedness the balance of the plaintiff's account if the note was not overdue (see *Bradley* v. *Seaboard National Bank,* 167 N. Y. 427; *Mann* v. *Franklin Trust Co.* 158 App. Div. [N. Y.] 491), since here

the judge found that the note dated February 14 was overdue at the time the defendant applied to it the deposit balance. This finding necessarily involved the finding that the note was not renewed by the transactions between the plaintiff and the cashier after that date. The auditor found that the actual limitation on the authority of the officers of the bank was not brought to the plaintiff's attention but that "there was no concealment of any such limitation, and the plaintiff made no inquiry as to the authority" of the officers of the bank. Other facts found by the auditor, however, warranted the judge in finding that the plaintiff by previous dealings had been put on notice as to a limitation on the cashier's authority. When the note of October 14 was accepted he knew that the directors of the bank passed upon its acceptance and not the president with whom he dealt, and when he sought a renewal he was adequately informed that the directors and not other officers of the bank decided whether or not a renewal note would be accepted.

The auditor found that when the second note fell due the plaintiff was told by the cashier that it had been "taken care of." It does not appear that he asked or was told why or by whom or in what manner it had been "taken care of" and two months passed without anything more being said or done. Then at the request of the cashier he signed a third note dated back as of March 16 and payable June 16. The circumstances with reference to the giving of the third note bore no resemblance to what happened when the first and second notes were given. In view of the past experiences of the plaintiff with the bank the judge was warranted in finding that, without being told, the plaintiff knew that the seat of authority with respect to the acceptance of notes was in the directors and that the cashier had no authority to bind the bank in such a matter. The finding was also warranted that there was no ratification by the bank of the cashier's acts. One dealing with an agent with knowledge of limitations on the agent's authority cannot hold the principal for acts of the agent outside those limitations. *Mussey* v. *Beecher*, 3 Cush. 511, 516–517. *Rogers* v. *Holden*,

142 Mass. 196, 198. *McCarthy* v. *Parker*, 243 Mass. 465. *American Railway Express Co.* v. *Mohawk Dairy Co.* 250 Mass. 1, 11. See *Marquandt* v. *Boston Young Women's Christian Association*, 282 Mass. 28. The judge was warranted in finding that because of lack of authority in the cashier, known to the plaintiff, there was no effective renewal of the note dated February 14 and that it was an outstanding obligation of the plaintiff and overdue when the defendant applied to it the plaintiff's deposit. With respect to that deposit the relation of debtor and creditor existed between the bank and the plaintiff depositor and the bank had the right without the plaintiff's consent to apply the amount on deposit to the payment of an overdue note. *Laighton* v. *Brookline Trust Co.* 225 Mass. 458. *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114, 117.

*Exceptions overruled.*