JAMES E. HUNTRESS *vs.* WILLIAM K. BLODGETT & others.

Suffolk.   May 16, 1910. — June 27, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, & RUGG, JJ.

*Deceit.   Frauds, Statute of.*

In an action of tort for deceit, if the plaintiff shows that the defendant with an intent to deceive the plaintiff made false representations for the purpose of inducing him to pay money for the benefit of the defendant and others, and that the plaintiff, relying upon these representations, made the alleged payments, the plaintiff is entitled to recover.

False representations as to the business and profits of a certain corporation, made to induce a person to become a stockholder in the corporation and to put money into the treasury of the corporation in payment for his stock, are not representations made to induce such person to enter into a transaction which will result in a debt due to him from a third person concerning whose character, conduct, credit, ability, trade or dealings the representations were made, and therefore are not within the provision of the statute of frauds contained in R. L. c. 74, § 4. Following *Walker* v. *Russell*, 186 Mass. 69.

In an action of tort for deceit it is not a defense for the defendant to show, in regard to false representations made by him on which the plaintiff relied to his loss, that the defendant used due diligence to ascertain the truth in regard to the matters which were stated by him as facts within his own knowledge, and that he believed the statements which he made to be true.

TORT for alleged false representations made by William K. Blodgett, who hereinafter is called the defendant, James E. Leach and Herbert J. Blodgett.   James E. Leach died before the trial and the case proceeded against the two defendants William K. Blodgett and Herbert J. Blodgett.   Writ dated May 11, 1905.

In the Superior Court the case was tried before *Pierce*, J. The defendant with others had theretofore been engaged in carrying on the business of the H. J. Blodgett Company, a corporation engaged in the manufacture of certain grocers' specialties, including products known as alpha salad cream, clarte, gelide and other similar articles.   For several years previous to and until his decease in July, 1904, Robert B. Blodgett was largely interested in the company and had advanced considerable money to carry on the business.   The H. J. Blodgett Company had expended very large sums for advertising its products and had never made a profit in any year since its organization when

these advertising expenses were taken into the account. Only
by the large advances of Robert B. Blodgett and Herbert J.
Blodgett, which they cancelled each year, was it enabled to
continue to carry on business. After Robert B. Blodgett's de-
cease the business of the company was continued until it went
into the hands of a receiver on or about May 5, 1905. On or
about November, 1904, it became apparent that more capital
was needed to carry on the business successfully and, for that
purpose, one Gorman, who had been connected with and for a
considerable time had been manager of the company, inserted an
advertisement in a daily paper to secure additional capital. In
response to this advertisement the plaintiff, who was engaged in
the publishing of directories and had had very little experience in
companies of this kind, saw Gorman, who after a conversation
referred him to William K. Blodgett, and thereupon the plaintiff
called upon that defendant about the middle of December,
1904. At this time the defendant and the plaintiff had an in-
terview at the office of the factory of the H. J. Blodgett Com-
pany at 18 Thayer Street in Boston. The plaintiff saw the
office of the company, but did not investigate the manufactur-
ing plant, although he did see some boxes in a room outside the
office.

The plaintiff testified that, at the first interview with the de-
fendant, the defendant told him what a splendid business it was
and spoke about the profits, saying that the profits were forty per
cent net, and suggested to the plaintiff that he should put $25,000
into the business; that some time after this interview the plaintiff
declined in a letter to the defendant to make this investment.
That, after this letter had been sent, the defendant met the plain-
tiff on the street and told him that he had a new deal for him
and was coming in to see him. That, subsequently, in January
or February, 1905, the plaintiff again met the defendant at the
office of the plaintiff and had another interview; that the de-
fendant then stated that he could get along with $10,000, which
he desired the plaintiff to put into the business, and told him
also what a splendid business it was, and said that if the plain-
tiff would put in the $10,000 the defendant would cut off his
right hand rather than that the plaintiff should lose a dollar by
so doing ; that the plaintiff asked the defendant to show him the

books of the company and the defendant said that they were in the hands of an auditor and that he would get an extract of the 1904 business; that this was in the morning; that, subsequent to this, in the afternoon of the same day, the defendant handed the plaintiff a paper entitled "Sales H. J. Blodgett Co.," and stated that it was an abstract from the books of the sales what they had done in 1904; that everything then was on the paper that was there at the time of the trial; and that this was the only paper which the defendant showed him; that the defendant told the plaintiff that the business was a splendid one, and he talked that up all the time and about the profits whch were made in it, saying that he would get his $10,000 back in a year and a bonus beside, and that there was forty per cent profit in the business.

At this time the defendant was "praising the business" and said that there were few outstanding debts and that the company was doing a good paying business. This conversation took place at the time the paper in regard to the sales for 1904 was given to the plaintiff and before the giving of certain checks by the plaintiff. The plaintiff further testified that nothing was said as to the amount of stock on hand; that he never knew anything about that part of it then; that after he signed the agreement he did find out that there was some stock on hand; that the defendant told him that the creditors had agreed not to press their claims for five years, and he, the defendant, was to pay them up, but that nothing was said about the trademarks except that they belonged to the W. K. Blodgett Company or the H. J. Blodgett Company, and that they were to be taken over by a corporation called the National Maple Sugar Association; that nothing was said about the value of them; that he was not told at any time before signing the papers that the trademarks had been assigned, that he was not told that any of the merchandise had been assigned; that before signing an agreement in writing between the plaintiff and the defendant the defendant told him that he had sold $19,000 worth of the stock of the new National Maple Sugar Association. An agreement in writing, which was signed by the plaintiff and the defendant, was put in evidence by which the plaintiff agreed to buy certain shares of the National Maple Sugar Association and to pay into the treasury of that corporation the sum of $10,000 in the manner therein provided.

The plaintiff further testified that a week or two after the interview, on the day on which the paper in regard to the sales was given, the defendant again came to the office of the plaintiff, when the defendant stated that he wanted to organize the National Maple Sugar Association and have it take over the H. J. Blodgett Company's business. The plaintiff testified that in another week or two afterwards the defendant with Mr. Leach, who was the attorney for the H. J. Blodgett Company, came to his office, and that the defendant then wanted him to lend the H. J. Blodgett Company $500 on account of the transaction; that Mr. Leach said in the presence of the defendant that it was a prosperous business and that it was all right, whereupon the plaintiff lent the H. J. Blodgett Company the sum of $500.

The plaintiff also testified that, subsequently, on March 9, 1905, he lent the H. J. Blodgett Company a further sum of $500.

The plaintiff further testified that he paid altogether into the National Maple Sugar Association $5,891.51, in which he included the $1,000 hereinbefore referred to; that he had received back the sum of $542.88; and that he never took any merchandise belonging to the H. J. Blodgett Company for the $1,000.

At the close of the evidence the defendant asked the judge to make certain rulings, among which were the following:

" 1. That the plaintiff upon all the evidence is not entitled to recover."

" 4. That the defendant William K. Blodgett after the formation of the National Maple Sugar Association can only be held for such sums as were paid out by authority of said association and not for sums of money paid out independently by the plaintiff upon his own volition.

" 5. The defendant William K. Blodgett cannot be held for any damages to the plaintiff by reason of any dealings of the said plaintiff or the National Maple Sugar Association which were not with or on account of the H. J. Blodgett Company.

" 6. The oral statements of defendant William K. Blodgett made to the plaintiff, which related either to the assets and property of the corporation H. J. Blodgett Company or its prospects

of success, are under no circumstances actionable though proven not to be true.

" 7. Oral statements of the defendant William K. Blodgett although an officer or a director of the H. J. Blodgett Company made to the plaintiff which related to either the assets and property of the corporation H. J. Blodgett Company or its prospects of success are under no circumstances actionable though proven not to be true.

" 8. That if William K. Blodgett believed what he stated orally or in writing to the plaintiff as to the condition or prospects of either the H. J. Blodgett Company or the National Maple Sugar Company to be true and had used due diligence to ascertain the truth in regard to them, he is not liable to the defendant for such statements even though they proved not true."

" 11. That any statements to the plaintiff in regard to the condition and property or the prosperity and success of either the H. J. Blodgett Company or the National Maple Sugar Association made orally and not in writing will not allow the plaintiff to maintain an action for deceit although proven to be true."

The judge refused to make any of these rulings, although he made other rulings requested by the defendant which are not printed above.

The judge ordered the jury to return a verdict for the defendant Herbert J. Blodgett, and submitted the case to them as to the defendant William K. Blodgett. The jury rendered a verdict against that defendant in the sum of $2,700; and that defendant alleged exceptions.

The case was submitted on briefs.

*W. O. Underwood & J. S. Richardson*, for the defendant William K. Blodgett.

*F. M. Forbush & J. W. Morton*, for the plaintiff.

KNOWLTON, C. J. The exceptions in this case are to the refusal of the judge to give to the jury certain instructions requested by the defendant.

The first request was for an instruction, " That the plaintiff upon all the evidence is not entitled to recover." This was rightly refused. There was much evidence that the defendant, with an intent to deceive the plaintiff, made false representations for the purpose of inducing him to pay money for the ben-

efit of the defendant and others, and that the plaintiff, relying upon these representations, made the payments set forth in his declaration.

The fifth request was that " the defendant cannot be held for any damages to the plaintiff by reason of any dealings of the said plaintiff, or of the National Maple Sugar Company, which were not with or on account of the H. J. Blodgett Company." But the claim was for damages growing out of dealings with the defendant, William K. Blodgett, as an individual, which were witnessed in part by a contract in writing signed by the plaintiff as the party of the first part and by this defendant as the party of the second part, the making of which contract was induced by the false representations of this defendant.

The sixth, seventh and eleventh requests were to the effect that the defendant would not be liable for oral false representations which related to the assets and property of the H. J. Blodgett Company. These requests were founded upon the statute of frauds, R. L. c. 74, § 4, which provides that " No action shall be brought to charge a person upon or by reason of a misrepresentation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance is made in writing," etc. This provision, which has been re-enacted from time to time, is founded upon the St. 1834, c. 182, § 5, which contains the words, "to the intent or purpose that such person may obtain credit, money or goods thereupon." It is established in a series of decisions that its meaning is the same as if these words had been retained in the revisions of the statutes. *Medbury* v. *Watson*, 6 Met. 246. *Norton* v. *Huxley*, 13 Gray, 285. *Mann* v. *Blanchard*, 2 Allen, 386. In the present case the representations were not made with an intent or purpose that the party concerning which the defendant was speaking should obtain credit, money or goods upon the representations. They were made to induce the plaintiff to become a stockholder in a corporation and to put in money in payment for his stock, which corporation was expected to succeed to the business of the H. J. Blodgett Company, concerning which a large part or all of the representations were made. The question is fully covered by the decision in *Walker* v. *Russell*, 186 Mass. 69, in which it was held that the statute

applies only to representations made to induce the plaintiff to enter into a transaction which will result in a debt due to the plaintiff from a third person, concerning whose character, conduct, credit, ability, trade or dealings the representations were made.

The eighth request did not contain a true statement of the law. Due diligence to ascertain the truth in regard to statements made as of matters of fact within one's own knowledge is not enough to relieve the maker of them of liability, if they are false and are relied upon as true, and the person to whom they are made suffers loss thereby. *Litchfield* v. *Hutchinson*, 117 Mass. 195. *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403. *Montgomery Door & Sash Co.* v. *Atlantic Lumber Co.*, *ante*, 144.

*Exceptions overruled.*