HANLEY COMPANY, INC. *vs.* RICHARD S. WHITNEY.

SAME *vs.* EDWARD MARTINEZ.

Norfolk.    April 8, May 20, 1932. — June 28, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & DONAHUE, JJ.

*Agency,* Existence of relation.  *Sale,* Warranty.  *Deceit.*  *Evidence,* Competency, Best evidence.  *Law of the Case.*  *Conflict of Laws.*  *Witness,* Cross-examination.  *Practice, Civil,* Parties, Exceptions.

Evidence, at the trial of an action of contract or tort for breach of warranty and deceit in the sale of shares of corporate stock by the defendant to the plaintiff, that the defendant authorized an agent to dispose of the stock and "to make whatever arrangements he could," and in writing gave the agent "full power . . . to sign . . . for me all documents . . . affecting my interests in" the corporation, warranted, even if it did not require, a finding that the agent was authorized to sign for the defendant an agreement for the sale of the shares containing a certain representation by the defendant as to the financial condition of the corporation, and also to make oral representations of the same character in behalf of the defendant.

The representation by the defendant in the agreement above described was to the effect that the financial condition of the corporation on a certain date was as shown in a financial statement which the plaintiff had insisted upon receiving and had received.  There was further evidence at the trial of the action that the plaintiff desired to purchase the corporate shares in order to use the corporation as a local office of his business; that he did not study the statement in detail nor wait until an audit of the corporation's books could be made, since that season was of the most importance in his business, but insisted that the agreement should contain such representation or "guarantee"; that the defendant's agent orally represented that the financial condition of the corporation had not changed materially since the date stated in the agreement; that the plaintiff signed the agreement in reliance upon the "guarantee" and upon the oral representation of the defendant's agent, without making further investigation of the condition of the corporation, although he "was not satisfied that . . . [the statement] reflected the actual business condition of the" corporation; and that the financial condition of the corporation in fact was materially worse than that shown in the statement.  The defendant had no intent to defraud the plaintiff.  *Held,* that

(1) There was no merit in a contention by the defendant that the plaintiff was barred of recovery by his not having taken reasonable precautions to investigate the condition of the corporation before purchasing the shares;

(2) The circumstance, that the plaintiff was not satisfied with the financial statement furnished him, did not bar recovery;

(3) The evidence warranted a finding that the defendant was liable both in contract for breach of the "guarantee" and in tort for deceit by reason of the oral misrepresentation;

(4) There was no error in the admission of testimony by the plaintiff concerning conversations with the defendant's agent;

(5) There was no error in the exclusion of a question asked the plaintiff on cross-examination, whether he thought that the representation which the defendant's agent made to him was important, the plaintiff having previously testified that he had to and did rely upon such representation: the scope of cross-examination was largely in the discretion of the trial judge;

(6) Questions asked of the plaintiff on cross-examination relative to remarks made by him after the agreement had been entered into by the parties were immaterial and properly were excluded.

The defendant in the action above described filed a plea in abatement and motion to dismiss on the grounds that the plaintiff previously had brought an action in another State for rescission of the agreement of sale and that the plaintiff's cause of action was *res judicata* by reason of the judgment in the previous action. It appeared that the defendant never was a party to the previous action, and the plea in abatement and motion to dismiss were overruled. No exception to such order was saved by the defendant. At the subsequent trial on the merits, the judge excluded evidence offered by the defendant concerning the bringing of the previous action and also excluded the opinion of the court of the other State in that action. Upon exceptions by the defendant after a verdict for the plaintiff, it was *held*, that

(1) No exception having been saved to the order overruling the defendant's plea in abatement and motion to dismiss, that order was a final decision so far as the rights of the defendant in this action were concerned;

(2) If the proceedings in the court of the other State were competent for any purpose, the best evidence of such action would be a copy of the judgment or decree of that court;

(3) The defendant failed to show that he was harmed by the exclusion of the opinion;

(4) The defendant's exceptions must be overruled.

Two ACTIONS OF CONTRACT. Writs dated October 5, 1928.

A motion to dismiss and a plea in abatement by the defendant in each action were overruled by *Brown*, J. The plaintiff was allowed to amend each action into an action of contract or tort. The declarations are described in the opinion.

The actions were tried together in the Superior Court before *Dillon*, J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the first action in

the sum of $6,240.14, and a verdict for the plaintiff in the second action in the sum of $12,900.34. The defendants alleged exceptions.

*E. A. McLaughlin, Jr.,* for the defendants, submitted a brief.

*W. R. Cook, (H. F. Knight* with him,) for the plaintiff.

CROSBY, J. The plaintiff, under its original corporate name, Hanley Ceramics Company, was incorporated under the laws of the Commonwealth of Pennsylvania and engaged on March 16, 1926, in the manufacture of bricks, having its principal place of business at Bradford, Pennsylvania. The Anglo Dutch Trading Corporation was a corporation existing by virtue of the laws of the State of New York, having its principal place of business in the city of New York, and engaged in the business of buying and selling bricks. The Hanley Ceramics Company is now the Hanley Company, Inc.

These actions of contract or tort are to recover damages for breach of warranty and false representations by the defendants to the plaintiff in the sale of stock of the Anglo Dutch Trading Corporation (which will hereafter be referred to as the corporation). Both actions relate to the same transaction. The declarations were amended at different times, and finally consisted of five counts. The first, second and third were waived by the plaintiff at the trial, and the cases were submitted to the jury on counts 4 and 5. These counts in each case were identical except as to the allegations respecting damages.

The fourth counts were in contract for breach of warranty. They allege in substance that on or as of March 16, 1926, the plaintiff under its then corporate title of Hanley Ceramics Company entered into contracts in writing with the defendants and other stockholders of the corporation, wherein it is alleged that the plaintiff agreed to purchase the stock of the corporation, and pay therefor $30 for each share of the common stock and $100 plus accrued and unpaid dividends for each share of the preferred stock; that the plaintiff in entering into the agreement relied on the representations of the defendants in

art. Fourth thereof that the financial condition and net worth of the corporation were, on December 31, 1925, as set forth in the statement, and that the plaintiff relied on the representations of the defendants' authorized agents that the financial condition and net worth of the corporation were, on March 16, 1926, substantially as set forth in the statement; that in accordance with the agreement in the case against Whitney the defendant delivered to the plaintiff forty-eight shares of common stock and fifty shares of the preferred stock of the corporation, and in the case against Martinez the defendant delivered to the plaintiff ninety-six shares of the common stock and one hundred shares of the preferred stock; that the plaintiff paid the defendants for said stock $6,740 and $13,480 respectively. The fourth count further alleges that neither the financial condition nor the net worth of the corporation was on December 31, 1925, as set forth in the statement; that the stock was on December 31, 1925, in fact, worthless, as stock of a going concern, and continued to be worthless from that time to and including March 16, 1926; that upon discovery of the financial condition of the corporation the plaintiff immediately offered to return the stock and demanded of each defendant that he return to the plaintiff the money paid therefor.

The fifth count in each case was in tort alleging deceit based upon the same facts as alleged in the fourth count.

Each defendant filed a "Plea in Bar and Motion to Dismiss," in which it was alleged that on June 25, 1926, the plaintiff brought an action in the Supreme Court of the State of New York against him for rescission of the agreement, and that, after hearing, that court decided that before the plaintiff could rescind, it must make restitution of certain assets of the corporation and cause the corporation later to be restored to the *status quo* which existed on March 18, 1926; that the plaintiff had failed to do this, and had so disposed of the business and assets of the corporation that it cannot now restore it to said status, and that the cause of action set forth in the plaintiff's writ and declaration was *res judicata*. To these pleas and motions to

dismiss the plaintiff filed replications denying the allegations therein, alleging that the defendants never were parties to the action in New York, and that by order of the court in that action the action was severed and discontinued as to them. Copies of the final judgment of the Supreme Court of New York in that action were attached to and made parts of the replications. The pleas in bar and motions to dismiss, after hearing in the Superior Court, were overruled on September 5, 1929. No exception was taken by the defendants to that action. Thereafter the defendants filed answers pleading a general denial, and certain other defences, but during the trial counsel stated that their answers were simply general denials.

It was admitted by the defendant Whitney that he signed the agreement. It was admitted by the defendant Martinez that one Lefferts, purporting to act for him, also signed it. The defendants testified that each owned the number of shares of common and preferred stock hereinbefore described, and delivered their stock certificates to the plaintiff, and received in payment therefor from the plaintiff the amounts above stated.

The fourth article of the agreement for the sale of the stock to the plaintiff is as follows: "The Sellers represent to the Purchaser that the financial condition of said Anglo Dutch Trading Corporation was on December 31, 1925 as set forth in the statement of Scovell Wellington & Company, dated January 25th, 1926, a copy of which statement is hereto annexed and made a part of this agreement. It is understood, however, that the Sellers shall not nor shall any of them be in any way personally liable for any amount which may be recovered from said Anglo Dutch Trading Corporation by reason of any law suits now pending or which may hereafter be brought against said corporation, nor for any amount of the Accounts Receivable set forth in said statement which may prove to be uncollectible, nor for the difference in value of any of the assets, between that set forth in said statement and that which may be realized upon a subsequent sale."

There was evidence tending to show the following facts:

Apart from the signing of the agreement and delivery of the stock, the defendant Whitney left the whole matter in the hands of Lefferts who acted for him in the sale of the stock, and Martinez authorized Lefferts to sign the agreement for him and make whatever arrangements he could for the sale of the stock and to negotiate a sale on that basis. Just before the transactions relating to the sale of these stocks were consummated, the plaintiff deemed it important to establish an office in New York City for the sale of its products, and W. L. Hanley, Jr., at that time president of the plaintiff, in March, 1926, went to New York to open an office and hire a local manager. On or about March 6 he was shown the office of the corporation. While there it occurred to him that he could accomplish his purpose more speedily if he could purchase the corporation, and secure at once an office and manager. He met one Keuls, then president of the corporation, with whom negotiations were had resulting in the agreement. Before purchasing the stock and employing Keuls as manager, Hanley insisted upon a statement of the financial condition of the corporation in addition to the oral representations which had been made to him, and was furnished with a statement made by Scovell, Wellington & Company, accountants, which covered the period from November 5, 1925, to December 31, 1925. Hanley testified that he did not study the statement in detail, but noticed that it showed a net worth of over $64,000, and that although the corporation had suffered a loss of $114 for the year, it had made a profit of $2,135 between the two dates last referred to. As the statement recited that "these statements have been prepared without verification from outside sources," Hanley insisted that the agreement contain the "guarantee," by which he referred to art. Fourth. There was evidence that the spring months were of most importance in the brick business, and the plaintiff did not want to wait until an audit of the books of the corporation could be made by an accountant. There was no statement of the condition of the corporation after December 31, 1925. Accordingly, when the agreement was signed on March 19, 1926, Hanley

raised the question as to the condition of the corporation as of that date, and Keuls and Lefferts told him that its condition had not materially changed since December 31, 1925. Hanley testified that he signed the agreement on behalf of the plaintiff relying on the statement contained in art. Fourth of the agreement, and on the oral representations of Lefferts.

As bearing upon the authority of Lefferts to act for the defendant Martinez in the sale of his stock in the corporation, the following letter sent by him to Lefferts on March 19, 1926, was admitted in evidence: "I hereby confirm telegram sent you this afternoon. . . . You will understand by this that I give you full power to act as my attorney, and to sign in my name and for me all documents relating in any way to, or affecting my interests in the Anglo Dutch Trading Corporation." This letter was signed and sworn to by Martinez before a notary public on the day it bears date. Hanley testified that on or about the time the agreement was signed Lefferts told him that the condition of the company was no worse then than it was on December 31, 1925; that the net assets were at least the amount shown in the statement. Martinez did not deny the signature or the authority of Lefferts to sign for him. He testified that the agreement had been signed by Lefferts by his authority; "that Lefferts was authorized to dispose of his (Martinez's) stock to any one who might buy it; that Lefferts was authorized to make whatever arrangements he could; that he was willing to sell his stock if the others did so, and authorized Lefferts to negotiate a sale on that basis for him; that in fact he constituted Lefferts his attorney." This testimony warranted, if it did not require, a finding that Martinez authorized Lefferts to execute the agreement on his behalf and to make the representations testified to by Hanley.

There was evidence that there was a shortage in the inventory shown on the statement of eight hundred thirty-six thousand two hundred thirty-six bricks of the value of $16,724.72, which was accounted for by reason of the fact that Keuls, who was a party to the agreement and formerly

president of the corporation, took money to cover payment for bricks that he falsely represented he bought from the dock department of New York, but which he never bought; that he misled Lefferts in making these statements to cover up his own peculations from the funds of the company; and that Keuls induced his accountants to prepare a false report to cover up his stealings from the company. Counsel for the defendants admitted this shortage. In addition, there was included in net worth anticipated profits of $14,264.50 on two million seventy-six thousand bricks sold under four contracts, but not delivered; these profits were never realized, as, when delivery of the bricks had been completed, a loss occurred in the four contracts. This fact was not discovered by the plaintiff until after the books of the corporation had been audited by its accountants. Moreover, the anticipated profits did not take into account many items of expense incident to the delivery of the bricks and no allowance was made for twenty-five thousand bricks which were to be delivered free under one of the contracts. The evidence tended to show that the statement also was false in that instead of a loss of $114 for the calendar year 1925, the corporation incurred an actual loss of $14,378.50; and that instead of making a profit of $2,135 from November 5 to December 31, 1925, the corporation incurred a loss. Excluding only the shortage in the inventory and the anticipated profits, the net worth of the corporation, including $8,000 for good will, was, on December 31, 1925, $33,209.11, instead of $64,198.33 as shown by the statement. The net worth of the corporation at the close of business on March 18, 1926, "On Basis of Books" was, according to the statement of the plaintiff's accountant, $44,354.55; on the basis of correct accounting the net worth was $16,884.44, instead of substantially $64,000 as represented by Lefferts. It is stated in the defendants' brief: "The defendant admits that the Scovell Wellington report hereinbefore referred to and allegedly relied upon by the plaintiff under the circumstances herein set forth erroneously stated — 1. That the net worth of said Anglo Dutch Trading Corporation was represented as

being, exclusive of good will, at least the sum of $56,198.33, whereas in truth and fact it had a net worth not exceeding in any event the sum of $25,000; 2. That the good will of the corporation was represented as being of a value of at least $8,000, whereas in truth and fact said corporation had no good will; 3. That said report represented a loss of $114 during the year 1925, whereas in truth and fact said operations resulted in a substantial loss running into several thousand of dollars; and — 4. That said report set forth that the operation of the corporation from November 5, 1925, to December 31, 1925, showed a profit, whereas in truth and fact there had been no profit, but a loss."

The defendants and the other stockholders executed the agreement at the insistence of the plaintiff before it would agree to purchase the stock. Under art. Fourth of that agreement the defendants represented to the plaintiff that the financial condition of the corporation on December 31, 1925, was as set forth in the statement. Findings were warranted that the representations so made were false, and that the plaintiff, believing them to be true, purchased the stock. Upon such findings the plaintiff would be entitled to recover under the agreement. It could have been further found that the representation of the defendants' agents that the financial condition of the corporation on March 16, 1926, the date of the agreement, to the effect that such condition was no worse than it was on December 31, 1925, also was false and that such representation was made by authorized agents of the defendants. Upon the evidence it could have been found that the plaintiff relied upon the statement and the oral representations of the defendants' authorized agent believing them to be true. Upon such findings the plaintiff was entitled to recover for breach of warranty under the fourth count, and in deceit under the fifth count based upon the same allegations as set forth in the fourth count.

The contention of the defendants that, if the plaintiff was in such haste to enter into the contract for the purpose of opening an office in New York that it did not take reasonable precautions to investigate the condition of the com-

pany, it cannot recover, cannot be sustained.  It was said in *Gould* v. *Stein*, 149 Mass. 570, 577, "The fact that the plaintiffs had an opportunity to examine the rubber, and actually made such examination as they wished, will not necessarily do away with the effect of the warranty.  The plaintiffs were not bound to exercise their skill, having a warranty."  In the recent case of *Charbonneau* v. *Rokicki*, 278 Mass. 524, 526–527, an action for deceit arising from false statements respecting a timber lot which the defendant represented was a part of a farm sold by him to the plaintiff, it was held that the plaintiff was justified in relying upon the defendant's representations and was not bound to examine the records.  A party may recover if he relied upon a specific warranty even if, in his own judgment, the goods purchased by him were not as represented.  *Harrington* v. *Smith*, 138 Mass. 92, 98.  See also *Smith* v. *Hale*, 158 Mass. 178; *M & M Co. Inc.* v. *Hood Rubber Co.* 226 Mass. 181, 183.  It follows that the representations made by the defendants' authorized agents to the plaintiff and art. Fourth of the agreement could be relied on, although the officers of the plaintiff failed to make further investigation respecting the condition of the corporation.  *Huntress* v. *Blodgett*, 206 Mass. 318, 324.  *Thomson* v. *Pentecost*, 206 Mass. 505, 511.

The fact that the plaintiff's president testified that when shown the statement "he was not satisfied that that report reflected the actual business condition of the company" does not bar the plaintiff from recovery.  It merely shows that Hanley was not satisfied with the statement and did not have time to verify it, and it reasonably could be found to have caused him to insist upon the "guarantee" embodied in the agreement thereafter entered into by the defendants before he would agree to purchase the stock.

There was evidence offered by the defendants and excluded, subject to their exception, that the plaintiff brought the suit hereinbefore referred to in the Supreme Court of New York against the defendants and all the other stockholders of the corporation for the rescission of the contract, but was unable to obtain service upon the defendants;

that the order in that case provided that the plaintiff restore to the defendants served with process their shares of stock and restore the assets to the corporation; and that the names of these defendants and certain others named "be and the same hereby are stricken out as parties herein, and as to them the action is hereby severed." The defendants then offered the opinion of the court in that case, which was excluded subject to their exception. If the action of the New York court were competent for any purpose, the best evidence of such action would be a copy of the judgment or decree of that court, which was not offered in evidence. More than a year before the present action tried in the Superior Court had ended, an order overruling the defendants' motions to dismiss and pleas in bar had been entered. As no exception was saved to this action of the Superior Court, that order was a final decision so far as the rights of the defendants in the present cases are concerned. *Barringer* v. *Northridge*, 266 Mass. 315, 319. Any action by the Supreme Court of New York could not be enforced against these defendants who were not parties to it; whatever the action of that court may have been, the defendants are not harmed by the exclusion of the opinion. It is not disputed that the defendants in the present cases were struck out as parties in that suit. The defendants, upon whom the burden rests, have failed to show that they were harmed by the exclusion of the opinion, *Woodard* v. *Eastman*, 118 Mass. 403, *Posell* v. *Herscovitz*, 237 Mass. 513, and cases cited at page 517, and the exception to the exclusion of the opinion must be overruled.

On neither of the counts which were submitted to the jury does the plaintiff seek to recover, as the defendants argue, on the ground of rescission. Under the fourth count the plaintiff seeks to recover for an alleged breach of an express warranty; the fifth is based upon deceit. Although the declaration contained counts based on rescission, those counts were waived during the course of the trial. The evidence justified a finding that the defendants were liable under both counts. But there could be only one

recovery, and the trial judge so instructed the jury. To recover the plaintiff is not required to prove that there was any fraudulent intent upon the part of the defendants to defraud it. The plaintiff does not so contend.

The exception to the admission of testimony of the plaintiff's president to conversations which he had with Lefferts regarding the financial condition of the corporation on December 31, 1925, cannot be sustained, as there was evidence which justified the finding that Lefferts was authorized to act for both defendants in the sale of stock to the plaintiff.

Counsel for the defendants on recross-examination asked the plaintiff's president, Hanley, "Did you think that that statement which Lefferts made to you was important?" This question was excluded subject to the exception of the defendants. This witness, on his direct and cross-examination, testified at length. He had previously testified that he relied upon the oral representations made by Lefferts because he was interested in knowing the condition of the company and had to rely upon what Keuls and Lefferts told him as they were the only people familiar with it. There was no error in the exclusion of the question. The scope of cross-examination is largely within the discretion of the trial judge. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 523.

The defendants excepted to the exclusion of certain questions asked the witness Hanley on cross-examination relative to remarks made by him after the agreement had been entered into by the parties. These questions need not be considered in detail. It is sufficient to say that their exclusion could have had no material bearing upon the rights of the parties, and they were rightly excluded.

At the close of the evidence each defendant moved in writing that a verdict be directed in his favor. The motions were denied subject to the exceptions of the defendants. It is plain that these motions could not properly have been granted. Accordingly the exceptions to their denial must be overruled.

The defendants presented twenty-six requests for rulings.

All of them except those numbered 2, 5, 6, 11, 12 and 13 are waived. They need not be considered separately. We find no error in the refusal of the trial judge to grant any of them. Certain exceptions were saved to portions of the charge. They are not argued and they need not be considered. As we perceive no error in the conduct of the trial, the entry in each case must be

*Exceptions overruled.*