SCHOONER DARTMOUTH, INC. *vs.* MERVYN F. PIPER.

Suffolk.    January 8, May 14, 1965. — June 10, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Insurance,* Warranty of coverage, Agent, Maritime insurance.    *Warranty.*
*Practice, Civil,* Case stated.

A cause of action by the owner of a vessel against the owner's expert insurance advisor and agent, based on an alleged express warranty by the defendant to the plaintiff as to the scope of the coverage of a marine insurance policy on the vessel procured by the defendant by direction of the plaintiff relying on the alleged warranty, was not supported by certain statements by the defendant to the plaintiff which were made before there had been any reliable judicial construction of the policy and did not constitute affirmations as to the scope of the coverage as an existing fact susceptible of knowledge.    [350–352]

The duty of this court on a case stated to order the correct judgment on the facts did not require it to deal with a theory of recovery other than the theory on which the case appeared to have been tried below.    [353]

CONTRACT OR TORT.    Writ in the Superior Court dated December 22, 1959.

The action was heard by *Coddaire, J.,* on an auditor's report.

*James G. Fay* for the plaintiff.

*John O. Parker* (*William T. Conlan* with him) for the defendant.

WHITTEMORE, J.    This is an action of tort or contract for damages resulting from reliance on a representation in respect of the coverage afforded by an insurance policy on the Schooner Dartmouth, owned by the plaintiff.    The plaintiff's appeal, under G. L. c. 231, § 96, is from the order allowing the defendant's motion for judgment for the defendant on the auditor's report.    The reference to the auditor provided that the findings of facts were to be final.    The declaration was in two counts.    The plaintiff, before

any testimony was taken, waived count 1 of its declaration, sounding in tort ("representations . . . false and fraudulent, and . . . the defendant knew, or should have known"), and the defendant assented to the waiver.

The auditor's report shows that the controversy arose from the collision at sea on January 26, 1955, of the Schooner Dartmouth with another vessel at a time when the Dartmouth was not fully insured. On January 2, 1958, the owners of the other vessel recovered judgment in the United States District Court against the plaintiff in this action in the sum of $15,618.63. One half of this sum was paid by the insurers under a standard form hull policy on the Dartmouth and the balance of $7,809.31 was paid by the plaintiff.

The plaintiff in count 2 alleged that the defendant, an insurance broker, "[i]n consideration of the premium to be paid by the plaintiff for . . . [a P & I (protection and indemnity) policy] and the commission to be earned by the defendant, . . . [had] expressly warranted and represented" that the P & I policy would protect against liability for collision at sea over and above the liability covered by the hull insurance; that the plaintiff, relying upon the representations, ordered that the defendant obtain a P & I policy but that such policy did not cover as represented; and that the plaintiff had relied upon the "expressed warranty of the defendant in purchasing said P and I insurance policy" and had suffered damages because of the breach.

The principal stockholder and authorized representative of the plaintiff was Slade Gorton. The defendant's negotiations were with Gorton.

The auditor found that the standard hull policy coverages include the liability of the owner for damage caused to property of others. The coverage is in the amount of the value of the insured vessel or, if the policy is written for a lesser sum than that value, then for that proportion of the loss that the policy figure bears to the appraised value.

The appraised value of the Dartmouth was $45,000. Gorton directed Piper, the defendant, to place hull insurance in this amount. Piper diligently attempted to do so, but was able to procure only $22,500 of hull insurance. Gorton, in June, 1954, asked Piper what his protection would be if the vessel caused damage or injury to others. Piper replied that the existing "P & I policy would cover all liability that the hull policies did not pick up."

The hull policies were effective for one year beginning July 6, 1954. The P & I policy was expiring on September 30, 1954. In late September Piper, having been seeking to place more hull insurance as Gorton had requested, reported to Gorton that such coverage could not be obtained. Piper and Gorton then again discussed the effect of having fifty per cent hull insurance and Piper said "that if the vessel was in collision and caused damage to others, the P & I insurance would pick up the liability where the hull insurance left off." Gorton took Piper's statement to mean that in case of collision at sea causing damage to another vessel the Dartmouth would be fully covered by insurance. This interpretation, the auditor found, was fair and reasonable. In reliance on the statement, the plaintiff instructed Piper to procure a new P & I policy for $100,000 effective October 1, 1954, and Piper did so.

The auditor found, in part, as follows: The coverage afforded by a P & I policy begins with a loss which exceeds the value of the vessel, so that a loss up to that value "would be borne exclusively by the hull carriers and the owner, and not the P & I carrier." Piper is an experienced insurance broker "well versed in the specialty of servicing owners of vessels in the procuring of insurance." He made his statement to the plaintiff in the capacity of an expert insurance broker. The "plaintiff looked upon him as a qualified broker and specialist in the field of maritime insurance." Piper made his statement as one of fact, and "did not use words that it was his opinion that the P & I policy would pick up the liability where the hull insurance left off." The statement was not made to deceive or with

knowledge that it was false. Piper had every reason to believe that Gorton would rely on the statement and Gorton did rely on it. Piper should have known that his statement was not correct.

The plaintiff contends that Piper's statement was made in the course of the sale of an insurance policy, in which Piper, as agent of the seller, stood in the position of the seller and affirmed a fact as to the essential quality of the policy being sold. Hence, the argument runs, the purchaser having relied on the faith of the affirmation, there was, in effect, an express warranty. The warranty would be that the policy when tested would be as Piper had said. See, as to the sale of goods, *Henshaw* v. *Robins,* 9 Met. 83, 88. The plaintiff also relies on *Carolet Corp.* v. *Garfield,* 339 Mass. 75. There, however, the warranty was in terms express.

Piper could, of course, have made such an undertaking to the plaintiff, with the result that he would have been liable regardless of whether the reported coverage of a P & I policy was in accordance with the accepted view of marine underwriters at the time it was made and hence was supported by all that Piper could have known on diligent inquiry. There was, however, no such undertaking by Piper in any express words and the facts found give no basis for implying it.

The plaintiff takes no support from the indications that there may be recovery in contract (assumpsit) for breach of warranty (as well as in tort for deceit) where there has been an innocent misstatement of an existing fact susceptible of knowledge. See *Huntress* v. *Blodgett,* 206 Mass. 318 (tort against a stockholder and director for an innocent misstatement that induced the purchase of capital stock); *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403, 404 (tort); *Hanley Co. Inc.* v. *Whitney,* 279 Mass. 546, 554–557 (contract or tort); *Yorke* v. *Taylor,* 332 Mass. 368, 371 (rescission); *Carolet Corp.* v. *Garfield,* 339 Mass. 75, 80 (bill to reach and apply, essentially an action at law to recover for breach of an express warranty in connection with the sale

of stock); *Pietrazak* v. *McDermott,* 341 Mass. 107 (tort); Williston, Liability for Honest Misrepresentation, 24 Harv. L. Rev. 415, 420–422, 435; Williston, Sales (Rev. ed.) § 197; Bohlen, Misrepresentation as Deceit, Negligence, or Warranty, 42 Harv. L. Rev. 733, 746–747; Carpenter, Responsibility for Intentional, Negligent and Innocent Misrepresentation, 24 Ill. L. Rev. 749, 771; Prosser, Torts (3d ed.) § 102, pp. 724–725.

The view that the underlying principle of *Chatham Furnace Co.* v. *Moffatt, supra,* and like cases, may be availed of in an action of contract is fully expounded by Professor Williston. See citations above. The plaintiff quotes from Williston, Sales (Rev. ed.) § 197. But the discussion relates to warranties of the truth of statements of existing facts "susceptible of actual knowledge." *Chatham Furnace* case, 147 Mass. at 404. Whether the terms of an insurance policy are of such a nature as to cause a court to construe it in a particular way is not a matter of such fact. Piper's words were not the equivalent of such a forecast, nor did the circumstances make them such in law.

Piper's statements, we assume, were reasonably construable as representations of an existing fact, that is, that the prevailing view of insurance underwriters, on which they acted in 1954 in writing policies and paying losses, was that the P & I policy afforded the coverage stated. The action, however, judged by the declaration, the briefs, and the auditor's report does not appear to be founded in breach of the warranty of the truth of that representation of fact.

There is a further difficulty with the effort to import a warranty in connection with the sale of the P & I policy. Piper's statement was not a part of that sale. There is no basis for concluding that the statement was made to induce the sale or to obtain the commission. Piper did not solicit the purchase of the P & I policy. Piper's duty to the plaintiff in respect of his statement arose from his position as agent of the plaintiff in advising about and in obtaining insurance policies. The findings make clear the relationship. "The plaintiff had dealt with Piper, as broker, on many

previous occasions, had been given good professional service and the plaintiff had found Piper to be a competent and skilled insurance broker." Piper's acts in seeking and placing hull insurance and P & I insurance were all, according to the findings, at the plaintiff's direction.

We need not consider the liability of a compensated agent for negligently misreporting to his principal. See Restatement 2d: Agency, §§ 379, 401. *Harlow* v. *Bartlett,* 170 Mass. 584; *Dorr* v. *Massachusetts Title Ins. Co.* 238 Mass. 490, 495; *Capucci* v. *Barone,* 266 Mass. 578, 581. See also Williston, Contracts (3d ed.) § 138; *Jenkins* v. *Bacon,* 111 Mass. 373, 377–378; *Rayden Engr. Corp.* v. *Church,* 337 Mass. 652, 658–662; *Rapp* v. *Lester L. Burdick, Inc.* 336 Mass. 438, 442. Neither the declaration nor the auditor's report presents that case.

The auditor's report contains certain summary findings that would have been appropriate to such an action.[1] But the report contains no finding as to what underwriters thought about the policy in 1954.[2] The pleadings did not present the issue. It was not until 1959, and after, that Federal court decisions established a reliable judicial construction in accordance with the auditor's finding. See *Landry* v. *Steamship Mut. Underwriting Assn. Ltd.* 177 F. Supp. 142 (D. Mass.), and the same case on appeal, *Steamship Mut. Underwriting Assn. Ltd.* v. *Landry,* 281 F. 2d 482 (1st Cir.); *Bluewaters, Inc.* v. *Boag,* 213 F. Supp. 473, 476 (D. Mass.).[3] The auditor, by his preliminary

---

[1] "Based upon his experience, knowledge and skill in the maritime field, Piper should have known that his statement to the plaintiff was not correct." "[B]ecause of his extensive experience with hull and P & I insurance policies [Piper] should have known that the statements made by him . . . in September 1954 were not correct and not in accordance with basic and elementary construction of the terms of a standard P & I policy."

[2] The record tends to support the statement in the defendant's supplemental brief (such briefs were requested by the court in respect of Piper's liability as agent): "The case having been tried on the single count of the declaration and single theory of recovery for breach of an express warranty, the defendant obviously never had the need or opportunity at the trial to introduce expert testimony as to the state of knowledge of marine underwriters in Boston in 1954."

[3] On appeal in that case the *Landry* rule was not at issue. 320 F. 2d 833 (1st Cir.).

Hilliker *v.* Springfield.

statement of the issues, confined the case on which he reported to the warranty declared on.[4]

The case, the auditor's report being final, is in effect a case stated on which we are to enter the judgment that the facts call for. *Connors* v. *Medford,* 334 Mass. 260, 263–264. *Abrams* v. *Reynolds Metals Co.* 340 Mass. 704, 705. But this principle, applied to an auditor's report, does not extend to resolving an issue that appears not to have been tried.

*Order for judgment affirmed.*